# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02630-MSK-NYW

ZANE SCHOENFELD,

 Plaintiff,

v.

KRISTEN THOMPSON (13th Judicial District Probation Officer in her personal capacity for damages),
GERARD O'HALLORAN (Washington County Deputy Sheriff in his personal capacity for damages), and
TRAVIS SIDES, (13th Judicial District, Deputy District Attorney, in his personal capacity for damages),

 Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

 This matter comes before the court on Defendant Travis Sides's Motion to Dismiss. [#60, filed May 19, 2017]. The Motion was referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated November 2, 2016 [#6] and the memorandum dated June 5, 2017 [#61]. After carefully reviewing the Motion and Response thereto, the entire case file, and the applicable case law, this court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED.

## PROCEDURAL BACKGROUND

 Plaintiff Zane Schoenfeld ("Plaintiff" or "Mr. Schoenfeld") initiated this civil action on October 24, 2016, through his attorney, asserting one claim pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages against Defendants Kristen Thompson ("Defendant

Thompson") and Gerard O'Halloran ("Defendant O'Halloran") in their individual capacities for "false arrest," "false imprisonment," "unlawful arrest without probable cause," and "constitutional malicious prosecution," in violation of his Fourth Amendment rights. [#1 at 4].[1] Defendant O'Halloran serves as "a Deputy Sheriff with the Washington County Sheriff and/or is employed as an investigator with the Washington County Sheriff Department." [*Id.* at ¶ 4]. Defendant Thompson is a probation officer with the 13th Judicial District, Colorado, and, at the time Plaintiff initiated this action, had served as his probation officer since approximately April 2016. [*Id.* at ¶ 5]. Plaintiff's claim is premised on allegations that Defendant Thompson falsely reported to Defendant O'Halloran that Plaintiff had been convicted of an offense under Colo. Rev. Stat. § 16-22-108(2.5)(c), and thus was required to register his email and social media addresses. Defendant Thompson's false statement resulted in Plaintiff's arrest and detention. [*Id.* at ¶¶ 9-12]. Plaintiff remained in jail for two weeks, after which he was released on a $1,070 bond. By the time he was released, he had lost his full-time job. [*Id.* at ¶ 13]. All Parties concede that Plaintiff was never convicted of a child sex crime as enumerated in § 16-22-108(2.5)(c). [#47 at 4-5].

On February 8, 2017, Plaintiff filed a Motion to Amend his Complaint. [#41]. Plaintiff proposed adding Deputy District Attorney Travis Sides as a defendant, adding and removing certain allegations, and asserting only claims for false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983. *See* [#41-2]. *See also* [#47]. On March 9, 2017, the undersigned presided over a Scheduling Conference at which she set certain pre-trial dates and deadlines and granted

---

[1] For ease and consistency of reference, this court refers to the page number as assigned by the court's Electronic Filing System if a unique paragraph identifier is not available or otherwise appropriate.

the Motion to Amend. *See* [#46].[2] Defendant Travis Sides waived service on April 6, 2017, [#55], and filed a Motion to Dismiss on May 19, 2017. [#60]. Plaintiff filed a Response on June 10, 2017. [#64]. Although not yet fully briefed, the Motion to Dismiss is nonetheless ripe for disposition. *See* D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

## FACTUAL BACKGROUND

For the purpose of assessing the sufficiency of Plaintiff's Amended Complaint, the court presumes as true the following facts. In January 2013, Plaintiff entered into a deferred judgment and sentence agreement in Kit Carson County District Court for attempted violations of Colo. Rev. Stat. § 18-3-402(1)(a) with respect to his estranged wife ("Kit Carson County case"). [#48 at ¶ 6].[3] Plaintiff then registered as a sex offender, in accordance with Colo. Rev. Stat. § 16-22-108. However, the offense resulting in the deferred judgment did not implicate Colo. Rev. Stat. § 16-22-108(2.5)(c), and thus Plaintiff was not required to register his email or social media addresses, or other information as required under § 16-22-108(2.5)(a).[4] [#48 at ¶ 7]. On or about September 14, 2016, Defendant Thompson falsely reported to Defendant O'Halloran that

---

[2] Between the commencement of this action and the addition of Defendant Sides, Defendants Thompson and O'Halloran filed respective Motions to Dismiss for failure to state a claim and on the basis of qualified immunity, [#23, #51], and a joint Motion to Stay [#24]. On June 7, 2017, the undersigned granted Defendant Thompson and Defendant O'Halloran's Motion to Stay and issued a Recommendation that their Motions to Dismiss be granted for failure to state a claim. *See* [#62].

[3] "A deferred judgment and sentence is a conviction in Colorado unless or until the deferred judgment and sentence is successfully completed and the charges are dismissed." [*Id.*]

[4] Section 16-22-108(2.5)(a) provides: "Any person who is required to register pursuant to section 16-22-103 and who has been convicted of a child sex crime shall be required to register all e-mail addresses, instant-messaging identities, or chat room identities prior to using the address or identity." Colo. Rev. Stat. § 16-22-108(2.5)(a).

3

Plaintiff had violated § 16-22-108(2.5)(a) by failing to list a social media account on his Washington County sex offender registration. [#48 at ¶ 9]. As Plaintiff's probation officer, Defendant Thompson knew that Plaintiff had not been convicted of any of the offenses enumerated in § 16-22-108(2.5)(c), and therefore was not required to register email addresses or social media accounts. [*Id.*] Defendant Thompson's false statement led to Plaintiff's arrest. [*Id.* at ¶ 10].

Specifically, on September 15, 2016, Defendant O'Halloran submitted "a materially false affidavit" in support of an arrest warrant for Plaintiff for violations of Colo. Rev. Stat. § 18-3-412.5(1)(k), for failing to register email or social media addresses as required by § 16-22-108(2.5)(a). [#48 at ¶ 11]. Prior to submitting the affidavit, Defendant O'Halloran asked Defendant Sides to review it. Defendant Sides "played no role in preparing the affidavit in support of arrest warrant," but rather "engaged in a legal review for the sufficiency of the evidence to support probable cause." [*Id.* at ¶ 12].[5] Defendant Sides agreed that the affidavit appeared to be sufficient, and approved the affidavit without first reviewing Plaintiff's criminal history to confirm that Plaintiff was subject to a conviction that would trigger the statutory duty to register an email address under Colo. Rev. Stat. § 16-22-108(2.5)(a). [*Id.* at ¶ 12]. The Washington County District Court relied on the affidavit in issuing the arrest warrant for Plaintiff, who was taken into custody on September 16, 2016. [*Id.*] Then, acting in his role as a Deputy District Attorney, Defendant Sides relied on the information asserted in Defendant O'Halloran's affidavit to file charges against Plaintiff on September 22, 2016. [*Id.* at ¶¶ 12, 14].

---

[5] The Amended Complaint contains two paragraphs identified as "12." [#48 at 5].

Around the same time, an unrelated arrest warrant for Plaintiff was issued in Kit Carson County on the basis that he was in violation of the terms and conditions of his probation. [*Id.*] The Amended Complaint is not entirely clear as to what happened next, but Plaintiff appears to allege that while he was able to post bond in Washington County, he could not post bond in Kit Carson County until he had an initial appearance in that county, and "he had to stay in the Washington County jail for two weeks until he was transported to Kit Carson County." [*Id.* at ¶ 13]. He lost his job as a result of the two-week detention. [*Id.*] Plaintiff alleges that but-for the Washington County arrest he would not have lost his job because, "he would have surrendered in Kit Carson County *not* Washington County," he would not have had to wait two weeks for the transport from Washington County to Kit Carson County, and "he could have seen a Kit Carson County Judge on the day of surrender or the next day and posted bond after that court appearance." [*Id.* (emphasis in pleading)]. Referring to these allegations, Plaintiff asserts a claim for false arrest as to Defendant Sides.

## LEGAL STANDARD

Defendant Sides argues that Plaintiff fails to state a cognizable claim for false arrest, and that he is entitled to qualified immunity. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions,

"and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Section 1983 of Title 42 of the United States Code allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). To assert a claim under § 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights

of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)). Qualified immunity is an affirmative defense to § 1983 liability. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). Once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

Plaintiff asserts that his rights arising under the Fourth Amendment and its protection against unreasonable seizures have been violated. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...shall not be violated." U.S. Const. amend. IV. A "seizure" within this context occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). The "reasonableness" of a particular seizure depends on the balance between "the nature and quality of the intrusion on the individual's Fourth Amendment interests…[and] the importance of the governmental interests alleged to justify the intrusion." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (10th Cir. 2007) (quoting *United States v. Place,* 462 U.S. 696, 703 (1983)). The key distinction separating a claim for false arrest or false imprisonment from one for malicious prosecution is the allegation that the complained-of detention occurred prior to the institution of legal process. *See Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008). Thus, a false arrest claim lies where a person has

been imprisoned without legal process. *See Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008). *Cf. Wilkins*, 528 F.3d at 798 (specifying that the offense supporting a malicious prosecution claim is not the absence of legal process, but that the legal process itself was wrongful); *Taylor v. Meacham,* 82 F.3d 1556, 1562 (10th Cir. 1996) (analyzing the Fourth Amendment malicious prosecution claim "that the affidavit prepared...in support of the arrest warrant contained deliberately false statements and omissions, thereby misleading the judge into issuing the arrest warrant") (additional citations omitted).

The Tenth Circuit recognizes a § 1983 false arrest claim when law enforcement "acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (citing *Keylon v. City of Albuquerque,* 535 F.3d 1210, 1216 (10th Cir.2008); *Fogarty v. Gallegos,* 523 F.3d 1147, 1156 (10th Cir. 2008)). *See also Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) ("[W]hen a warrantless arrest is the subject of a § 1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause."). The existence of probable cause is not measured by "[t]he subjective belief of an individual officer," but "whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer." *United States v. Valenzuela,* 365 F.3d 892, 896-97 (10th Cir. 2004) (quotations omitted). Where the context of the arrest is for a purported state offense, the precise scope of the constitutional right at issue "uniquely depends on the contours of a state's substantive criminal law." *Kaufman*, 697 F.3d at 1300-01. Defendant Sides argues essentially that the claim for false arrest fails as a matter of law because "arguable probable cause" existed for Plaintiff's arrest. [#60 at 6]. *See Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("Arguable probable cause is

another way of saying that the [defendant's] conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."). He also contends that the allegations in the Amended Complaint do not demonstrate that he acted in reckless disregard. [#60 at 7]. This court declines to address either contention because it perceives a more fundamental problem with the claim.

Plaintiff's claim for false arrest arises out of the allegations used to support the malicious prosecution claim asserted against Defendants Thompson and O'Halloran, i.e., inaccurate and misleading information was used to support the arrest warrant and subsequent arrest of Plaintiff. *See, e.g.,* [#64 at 6 ("The Plaintiff alleged he was taken into custody as a result of the arrest warrant in Washington County case 2016CR37 on September 16, 2016")]. Accordingly, the alleged constitutional violation occurred pursuant to the institution of legal process. *See Wilkins*, 528 F.3d at 799 ("At common law, the issuance of an arrest warrant represents a classic example of the institution of legal process.") (citation omitted). As addressed above, allegations pertaining to a seizure *prior* to the institution of legal process may form the basis of a false arrest claim, while allegations pertaining to a seizure following the institution of legal process may form the basis of a malicious prosecution claim. *See Wallace v. Kato*, 549 U.S. 384, 390 (2007) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."). Because Plaintiff's allegations demonstrate that he was detained pursuant to legal process, he has not set out a claim for false arrest. *See Myers v. Koopman,* 738 F.3d 1190, 1194 (10th Cir. 2013) (observing that claims for false imprisonment and malicious

prosecution cannot accrue simultaneously); *Wilkins*, 528 F.3d at 797-99 (citing Michael Avery et al., *Police Misconduct: Law and Litigation* § 2:10 (2007 Westlaw; POLICEMISC database) ("The Supreme Court's analysis in *Wallace*...indicates that such claims [i.e., challenging the institution of legal process] should not be characterized as false arrest or false imprisonment, because detention of the subject is pursuant to legal process.")). Plaintiff appears to acknowledge this, if inadvertently, in his Response in which he writes, "all three [Defendants] initiated the malicious prosecution of the Plaintiff." [#64 at 4 (citing [#48 at ¶¶ 8-9]). For these reasons, this court respectfully RECOMMENDS that the sole claim against Defendant Sides for false arrest claim be DISMISSED. In light of these findings that Plaintiff fails to plead a constitutional violation, I respectfully decline to address Defendant Sides's argument that he is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

1. Defendant Travis Sides's Motion to Dismiss [#60] be **GRANTED**; and

2. The court **DISMISS** Plaintiff's Amended Complaint without prejudice for failure to state a claim.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

DATED: June 15, 2017                    BY THE COURT:


                                        s/Nina Y. Wang_____
                                        United States Magistrate Judge

---

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).